**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL NO. 576, affiliated with the United Food and Commercial Workers Union International, Plaintiff,**

v.

**FOUR B CORP., Defendant.**

**Civ. A. No. 94–2447–KHV.**

United States District Court,
D. Kansas.

July 25, 1995.

Thomas H. Marshall, Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, for plaintiff.

John D. Dunbar, Daniels & Kaplan, P.C., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Plaintiff's Motion for Summary Judgment* (Doc. # 10) filed February 16, 1995, and *Defendant's Crossmotion [sic] for Summary Judgment* (Doc. # 14) filed March 20, 1995. Plaintiff, United Food and Commercial Workers Union Local No. 576 ["the Union"],[1] seeks an order compelling arbitration of a labor dispute pursuant to Section 301 of the Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185. Defendant, Four B. Corp. ["Four B"],[2] a Kansas corporation which operates retail grocery facilities throughout the Kansas City metropolitan area known variously as Ball's, Price Chopper, or Hen House, claims that plaintiff's

---

1. The Union is a labor organization in an industry affecting commerce within the meaning of Section 2(5) of the National Labor Relations Act ["NLRA"], as amended, 29 U.S.C. § 152(5).

2. Four B is an employer in an industry affecting commerce within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2).

action is barred by the six-month statute of limitations in Section 10(b) of the National Labor Relations Act ("NLRB"), 29 U.S.C. § 160(b), or alternatively, that the Union has failed to pursue the exclusive remedy provided under the collective bargaining unit.

Rule 56(c) the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

When deciding a summary judgment motion, the Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The following facts are undisputed. The Union and Four B d/b/a Balls/Price Chopper are parties to a collective bargaining agreement effective December 1, 1991, through December 1, 1994 ["the Agreement"].[3] The bargaining unit includes all meat department employees in "retail markets that are presently owned, leased, acquired, operated or supervised by the Employer during the period of [the] agreement." *Meat Cutter Contract,* Article III, § 3.1. Article X of the Agreement provides a final and binding procedure for the resolution of grievances. In this regard, grievances are defined as "[a]ny disagreement or difference of opinion between the Company and the Union which concerns the interpretation or application of the terms and provisions of [the] contract." *Meat Cutter Contract,* Article 10, § 10.1. Under the Agreement, any grievance not presented within 15 days following the event giving rise to such grievance shall be forfeited and waived by the aggrieved party (except payroll errors). *Meat Cutter Contract,* Article X, § 10.3. If the parties do not reach an adjustment within 15 days thereafter, the Agreement requires them to submit the grievance to arbitration. *Meat Cutter Contract,* § 10.5.

The Agreement contains a Hiring Hall Clause, which provides, in relevant part, as follows:

In the interest of maintaining an efficient system in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties agree to the following system of referral of applicants for employment:

a) The Union shall be the sole and exclusive source of referrals of applicants for employment.

b) The Employer shall have the right to reject any applicant for employment.

\*   \*   \*   \*   \*   \*

f) In the event the Employer violates any provision of this section and is notified by the Union, and fails to correct said violation or violations within 48 hours after receipt of notice by registered or certified mail from

---

**3.** The Agreement is a contract within the meaning of § 301(a) of the LMRA, 29 U.S.C. § 185(a).

the Union, the Union shall have the right to immediately subject said Employer to the termination of this Agreement, notwithstanding any provision of this contract to the contrary.

*Meat Cutter Contract,* Article II, § 2.1.

On or about September 25, 1994, Four B opened a new "Price Chopper" grocery store at 7000 West 75th Street in Overland Park, Kansas. Four B did not request Union referrals to staff the meat department at the new facility. On September 29, 1994, the Union filed a grievance, claiming that Four B had violated the Agreement by failing to request Union referrals. The Union also requested that Four B recognize it as the bargaining agent for meat department employees at the new store. On October 11, 1994, Four B rejected the Union's grievance, stating that the Union's demand for recognition as the bargaining representative for the new meat department employees was not covered by the Agreement and should be decided by the National Labor Relations Board ("NLRB"), not an arbitrator. Four B also denied the Union's claim as untimely, claiming that the Union had waived and forfeited its grievance by not pursuing its grievances on prior occasions when Four B had opened new Price Chopper stores and did not recognize the Union as the bargaining agent for new employees.

On May 11, 1993, the Union had filed a grievance under the Agreement claiming that Four B should have utilized Union referrals to staff the meat department at the 95th and Blue Ridge store when Four B changed the name of the facility from "Hen House" to "Price Chopper." On May 18, 1993, Four B denied the grievance, noting that the Union did not claim to represent a majority of the meat department employees at that location and stating that the Union's grievance was not covered by the Agreement. The Union did not pursue its grievance any further, nor did it request arbitration or file an NLRB charge or Section 301 suit in federal court.

On September 18, 1993, the Union had filed a grievance claiming that the Agreement covered meat department employees at the Price Chopper facility in Olathe, Kansas, which Four B had purchased from Food Barn Stores, Inc. On September 27, 1993, Four B rejected the Union's claim, asserting that the Union had waived its grievance by failing to file it within 15 days from June 29, 1993, the date on which Four B had opened the store. Four B further contended that the Agreement did not cover the Union's demand for recognition as the bargaining representative of the meat department employees at the Olathe location and that the representation issue should be decided by the NLRB, not an arbitrator. The Union did not pursue its grievance any further, nor did it request arbitration or file an NLRB charge or Section 301 suit in federal court.

■ Four B contends that the Union's action is barred by the six-month statute of limitations in Section 10(b) of the NLRA. Specifically, Four B asserts that the time for the Union to seek arbitration of its current grievance—dated September 29, 1994, concerning employees at the new Price Chopper on 75th Street—started to accrue when Four B denied the Union's grievances dated May 11 and September 18, 1993—concerning employees at other locations—because the Union did not seek to arbitrate the prior grievances. Four B contends that the Union's claim in this lawsuit attempts to resurrect the prior grievances. The pleadings and briefs are clear, however, that the September 29, 1994 grievance is the only grievance which the Union seeks to arbitrate in this lawsuit. Because the Union filed its complaint within six months from the date on which Four B rejected the September 29, 1994 grievance, the Union's action is timely. Thus, the Court must decide whether to submit the current labor dispute to arbitration.

■ Arbitration is a matter of contract; a party cannot be required to submit to arbitration any dispute which it has not agreed to submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Whether a collective bargaining agreement creates a duty to arbitrate a particular grievance is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise. *AT & T Technologies, Inc. v. Communica-*

*tions Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). In deciding whether a dispute is arbitrable, the Court may not rule on the potential merits of the underlying claim. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1419. As the Supreme Court stated in *United Steelworkers of America v. American Manufacturing Co.*:

> The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960) (footnote omitted).

Where a collective bargaining agreement contains an arbitration clause, courts apply a presumption of arbitrability. *See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419. This presumption is particularly applicable where the arbitration clause is broad, as the one employed in this case, which provides for arbitration of "[a]ny disagreement or difference of opinion between the Company and the Union which concerns the interpretation or application of the terms and provisions of [the] contract." *See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (applying presumption to similarly broad arbitration provision). The Court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1352–1353.

Four B argues that under the Agreement, the Union's sole remedy for Four B's failure to utilize hiring hall recommendations is termination of the Agreement. This argument, however, goes directly to the interpretation and/or application of the terms or provisions of the Agreement. Four B points to no clear and unmistakable indication by the parties that the Union's grievance does not fall under the duty to arbitrate under the agreement, and the Court cannot say with positive assurance that the arbitration clause may not be interpreted to cover the asserted dispute. Furthermore, to the extent that Four B argues that the Union has waived its right to arbitrate the September 29, 1994 grievance, that issue should be decided by the arbitrator. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Chicago Typographical Union No. 16 v. Chicago Sun–Times Inc.,* 860 F.2d 1420, 1424 (7th Cir.1988) (questions of procedural arbitrability such as standing, res judicata, and timeliness are issues for arbitrator to decide); *Local Union 370 v. Morrison–Knudsen Co.,* 786 F.2d 1356, 1358 (9th Cir.1986) (collateral estoppel and equitable estoppel are procedural issues for arbitrator).

Based on the foregoing, the Court concludes that Four B should be compelled to arbitrate the asserted labor dispute.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Summary Judgment* (Doc. # 10) filed February 16, 1995, should be and hereby is sustained, and *Defendant's Crossmotion [sic] for Summary Judgment* (Doc. # 14) filed March 20, 1995, should be and hereby is overruled.